UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

|  |  |  |
|---|---|---|
| MARK KENNDRICK GIBSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 12-131-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Mark Kenndrick Gibson ("Gibson" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 24, 27] Gibson argues that the administrative law judge ("ALJ") assigned to his case erred by failing to classify his degenerative disc disease as a serious impairment, by inadequately addressing his mental impairments, and by improperly weighing the medical source opinions. He seeks reversal of the ALJ's decision and an award of benefits. However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant, in part, the relief sought by Gibson and deny the Commissioner's motion.

-1-

**I.**

On October 29, 2008, Gibson applied for a period of disability, disability insurance benefits under Title II of the Social Security Act, and Supplemental Security Income ("SSI") under Title XVI of the Act.  [Tr., pp. 189-90, 196-98]  He alleged a disability beginning February 1, 2006.  [Tr., p. 189] Gibson's applications were denied initially and upon reconsideration.  [Tr., pp. 141-44, 149-54] Gibson, along with his attorney Shoshana Pehowic, and vocational expert ("VE") Dr. Janice Bending, appeared before ALJ Donald A. Becher on October 14, 2010. [Tr., p. 36] Through a decision dated December 7, 2010, ALJ Becher found that Gibson was not disabled under sections 216(i), 223(d) or 1614(a)(3)(A) of the Social Security Act and was not entitled to a period of disability, disability insurance benefits, or SSI. [Tr., p. 30]

Gibson was forty-five years old at the time of the ALJ's decision.  [Tr., p. 40]  He has a limited education, having completed the sixth grade,[1] and previously worked as a janitor, temporary service worker, and paper folder.  [Record No. 24, p. 2; Tr., pp. 201-08] Gibson's alleged disability stems from anxiety, depression, knee and back problems, and chronic obstructive pulmonary disease ("COPD").  [Tr., pp. 141, 149, 152, 216]  After reviewing the record and the testimony presented at the hearings, the ALJ concluded that Gibson suffered from a combination of severe impairments, including: depressive disorder, personality disorder (antisocial), substance disorder mixed by history, and sporadic COPD and asthma.  [Tr., p. 23]

---

[1]     There is some confusion regarding Gibson's educational background.  During the administrative hearing, Gibson testified that he "would have made it to the eleventh grade."  [Tr., p. 41]  However, he later confirmed that he dropped out of school before completing the seventh grade because he had to repeat several years.  [Tr., p. 80]

-2-

Notwithstanding these impairments, ALJ Becher found that Gibson retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels. [Tr., p. 25] However, the ALJ imposed the following nonexertional limitations:

> the claimant requires a work setting where he can avoid extremes of heat, fumes, dust, and gases; the claimant is able to perform simple, routine, and repetitive tasks[;] the claimant requires a work setting where there are no fast-paced production requirements; the claimant requires a work setting where he is required to make only simple, work-related decisions; the claimant requires a work setting where there are few, if any, workplace changes; the claimant requires a work setting where there is no interaction with the public required; and the claimant requires a work setting where there is only occasional and superficial interaction with coworkers and supervisors.

[*Id.*]

Based on the testimony of the vocational expert, the ALJ found that Gibson could not perform past relevant work. [Tr., p. 28] However, considering the claimant's age, education, work experience, and RFC, he found that Gibson could perform other jobs, such as dishwasher (silver wrapper) and car checker. [Tr., p. 29] After determining that Gibson could perform other work existing in significant numbers in the national economy, the ALJ concluded that he was not disabled. As a result of the ALJ's assessment, Gibson was denied a period of disability, disability insurance benefits, and SSI. [Tr., p. 30]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in

accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).   If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that he is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can perform his past work.  If he can, he is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work.  If he cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The Commissioner has the burden of proof only on "'the fifth step, proving that there is work

available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

Gibson argues that ALJ Becher erred by: (1) failing to account for his degenerative disc disease in the RFC; (2) failing to address the applicability of Listings 12.02, 12.05, or 12.06 to

his cognitive impairments; (3) inappropriately weighing the medical opinions of record in determining the RFC; and (4) improperly evaluating his credibility. Additionally, Gibson asserts that the ALJ should have compared his current claim to the psychological impairments underlying his previous grant of Social Security disability benefits. However, he acknowledges that the ALJ was not required to conduct a continuing disability review because this case does not involve a cessation of benefits claim. Rather, he "makes this argument to further demonstrate how unreasonable the ALJ's decision truly is." [Record No. 24, p. 30] The Court rejects this argument. ALJ Becher analyzed the evidence using the five-step evaluation process described above, as required by the Social Security regulations. He did not err by refusing to consider evidence that he was not required to take into account.

A.      **Degenerative Disc Disease**

Gibson asserts that ALJ Becher failed to adequately explain the finding that Gibson's degenerative disc disease does not constitute a severe impairment. The Commissioner maintains that Gibson failed to meet his burden on this issue. A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). This provision "has been construed as a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Thus, an impairment "can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.*

According to Gibson, his cervical and lumbar disc conditions "create more than a 'minimal effect' on his ability to perform work-related activities," and thus should have been classified as severe impairments by the ALJ. [Record No. 24, p. 16] He contends that ALJ Becher erred because he "entirely failed to mention Plaintiff's cervical and lumbar degenerative disc disease when he discussed which impairments he found to be 'severe.'" [*Id.*]

The Court does not need to decide whether ALJ Becher's failure to include an analysis of Gibson's degenerative disc disease at step two of his analysis was error. When an ALJ makes a finding that one or more of the claimant's impairments is severe, he "must consider limitations and restrictions imposed by all of [the] individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). As long as "an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'" *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)) (alteration in original).

Here, Gibson concedes that the ALJ discussed his degenerative disc disease in his RFC analysis. [Record No. 24, p. 16] In that portion of the decision, ALJ Becher found that Gibson's

> medical records indicate that he has a known history of a herniated disk at C6, as revealed by an MRI in 2005. However, a physical examination of the claimant in 2007[] established that the claimant had negative straight leg raises, his sensory exam was grossly intact, his lower extremity strength was 5/5, and that the claimant had a full range of motion in his extremities.

[Tr., p. 26 (citing Tr., p. 480)] Because ALJ Becher "continued with the remaining steps in his disability determination" and considered Gibson's degenerative disc disease when making his

RFC finding, his failure to find that the condition qualified as a severe impairment is not reversible error. *Maziarz*, 837 F.2d at 244.

Gibson also argues that the ALJ erred by refusing to include limitations concerning his degenerative disc disease in the RFC finding. Gibson was diagnosed with degenerative disc disease on March 26, 2004. [Tr., p. 429] The CT scan report showed "disc disease at L5-S1 with broad-based bulge and left sided accentuation without overt neural compression noted." [*Id.* (noting presence of "slight left L5 dorsal root ganglion displacement")] As indicated by the Claimant, the record contains a number of medical records documenting Gibson's treatment for back pain from 2003 to 2007. [Tr., pp. 335-428, 447-54, 461-62, 473-74] Gibson asserts that "it should be obvious that [his] back and neck pain is severe and limiting in a work setting." [Record No. 24, p. 17] The ALJ and Commissioner, however, relied on the 2007 emergency room physician report described above, as well as a February 21, 2009 examination by Dr. Alekh Gupta, which indicated that "there were no physical exam findings[] consistent with any degree of limitation." [Tr., p. 523] Accordingly, ALJ Becher included no exertional limitations in his RFC finding.

A claimant's RFC — what tasks he can or cannot perform — is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004) ("[The RFC] determination is expressly reserved for the Commissioner."). The ALJ need not "give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(3). Although it would be error for the ALJ to adopt an RFC without evaluating all of the medical source

evidence, *see* SSR 95-5p, 1996 WL 374183, at *2 (July 2, 1996), ALJ Becher explicitly considered all of the evidence in the record of this case.  [Tr., pp. 25-28]  Further, the RFC is supported by substantial evidence from the record, including Dr. Gupta's 2009 examination report, the 2007 emergency room physician report, and Gibson's own testimony that he "cares for his personal needs, prepares meals, washes dishes, takes out the trash, cares for his dogs, shops, pays bills, and watches television."  [Tr., pp. 26, 480, 521-24]  Therefore, Gibson's argument that ALJ Becher erred by adopting an RFC without providing physical limitations to accommodate Gibson's degenerative disc disease is unavailing.

### B.    Cognitive Impairments

Gibson asserts that ALJ Becher failed to evaluate his cognitive impairments properly. At the third step of the ALJ's evaluation, "a claimant will be found disabled if his impairment meets or equals one of the listings in the Listing of Impairments."  *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).  The Listing of Impairments "describes for each of the major body systems impairments that [the Social Security Administration] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525.  Gibson contends that the ALJ should have considered and discussed the applicability of one of the following listings:  Listing 12.02 for Organic Mental Disorders; Listing 12.05 for Mental Retardation, or Listing 12.06 for Anxiety-Related Disorders.  He requests that the Court remand this matter to the ALJ to address the elements of each of these listings.  The Commissioner, however, maintains that Gibson has failed to establish that his impairments meet or equal the listed impairments.

Gibson contends that the evidence in the record regarding his cognitive impairments implicates Listings 12.02, 12.05, and 12.06.  He argues that ALJ Becher's failure to "mention the applicability of these Listings of Impairments, let alone to address the specific elements of each Listing of Impairment, is legal error which warrants remand."  [Record No. 24, p. 20]  In support, Gibson cites *Risner v. Commissioner of Social Security*, No. 1:11-cv-036, 2012 WL 893882 (S.D. Ohio Mar. 15, 2012).  In *Risner*, the district court found that the ALJ had failed to complete the third step of the evaluation when he failed to "engage in a discussion and analysis . . . with respect to the claimant's physical impairment."  *Id.* at *4.  The case was remanded with instructions for the ALJ to provide a full explanation for his decision that the claimant had failed to meet or equal a Listed Impairment.  *Id.* at *4-5.

### 1.    Listing 12.06

Gibson argues that his "record of anxiety and panic attacks raises the possibility that Listing 12.06 might be appropriate."  [Record No. 24, p. 20]  To meet the listing for Anxiety-Related Disorders, a claimant must supply medical documentation of a listed anxiety disorder.  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.06(A).  In addition, the claimant must satisfy the requirements in either subpart B or C.   To qualify under subpart B, the anxiety disorder must result in at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration."  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.06(B).  Subpart C requires the claimant to

prove that his anxiety disorder results in a "complete inability to function independently outside the area of [his] home."  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.06(C).

Although the ALJ did not address Listing 12.06 in his decision, he did consider the applicability of Listing 12.04 for Affective Disorders.  ALJ Becher discussed Gibson's mental impairments in step three of his analysis as follows:

> The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.04.  In making this finding, I have considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  A marked limitation means more than moderate but less than extreme.  Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

> The first functional area is activities of daily living.  In this area, the claimant has a mild limitation.  The evidence in the record, including the testimony of the claimant at the hearing, shows that the claimant is, for the most part, able to engage in activities of daily living in an appropriate and effective manner, on an independent and sustained basis.

> The next functional area is social functioning.  In this area, the claimant has a moderate limitation.  The evidence in the record, including the testimony of the claimant at the hearing, shows that the claimant has some difficulty interacting independently, appropriately, effectively, and on a sustained basis with other individuals.

> The third functional area is concentration, persistence or pace.  In this area, the claimant has a moderate limitation.  The evidence in the record, including the testimony of the claimant at the hearing, shows that the claimant may have some difficulty in sustaining focus, attention and concentration sufficiently long enough to permit the timely and appropriate completion of work tasks.

> As for episodes of decompensation, the claimant had experienced no episodes of decompensation, which have been of extended duration.

[Tr., p. 24]  Accordingly, the ALJ concluded that Gibson's mental impairments did not satisfy the "paragraph B" criteria.  Further, he concluded that the "paragraph C" criteria were not met because Gibson failed to establish that he "had repeated episodes of decompensation, or a residual disease process, or an inability to function outside a highly supportive environment." [Tr., p. 25]

The ALJ's analysis of Listing 12.04 would apply equally to Gibson's impairments under Listing 12.06 because both listings contain essentially the same requirements in subparts B and C.  And, as the Commissioner points out, Gibson has "not provided evidence or argumentation to counter the ALJ's determinations" concerning his restrictions, episodes of decompensation, or ability to function outside his home.  [Record No. 27, p. 14]  It is well-established that "[i]f all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Comm'r of Soc. Sec.*, 34 F. App'x 202, 203 (6th Cir. 2002).  ALJ Becher discussed the application of Listing 12.04 in specific enough terms to make it clear that Gibson had also failed to meet his burden of proof with respect to Listing 12.06.  In other words, the ALJ's analysis provides a sufficient basis for "meaningful judicial review" on this issue.  *Reynolds*, 424 F. App'x at 416.  Therefore, the ALJ did not commit reversible error by failing to analyze Listing 12.06 separately.

## 2.      Listing 12.02

Gibson also argues that the listing for "[p]sychological or behavioral abnormalities associated with a dysfunction of the brain" is implicated in this case.  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.02.  To meet Listing 12.02, the claimant must demonstrate a "[h]istory and

physical examination or laboratory tests [that] demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities." *Id.* He may do this by establishing: (1) the loss of "specific cognitive abilities or affective changes and the medically documented persistence of" certain listed mental difficulties, and (2) either marked difficulties in daily living, social functioning, or maintaining concentration, or repeated episodes of decompensation. *Id.* Additionally, a claimant can meet the requirements in Listing 12.02 by providing a "[m]edically documented history of chronic organic mental disorder of at least 2 years' duration. . ." *Id.*

Gibson contends that the ALJ should have considered his mental impairments under this listing. In support, he points to a "history of head injuries, such as being hit with a police baton and on another occasion having an injury which required treatment including placement of a metal plate in his head." [Record No. 24, p. 20 (citing Tr., pp. 309, 597)] However, the records detailing these injuries are brief and not well-supported. One of the records referred to by Gibson is a form that he filled out, which includes the statement: "Have a plate in my head from a head injury when I was young." [Tr., p. 309] The other is from a diagnostic assessment completed on August 6, 2010, which records a statement from Gibson that six police officers "tried to beat [him and] broke one night stick."[2] [Tr., p. 597] Additionally, Mr. Kroger noted that Gibson "allege[d] that he suffered a head injury after being hit by police with flashlights." [Tr., p. 518] Other than these statements, the record is devoid of any reference to a history of head injuries.

---

2       This record does not indicate that Gibson suffered a head injury from the beating.

None of the evidence in the record "demonstrate[s] the presence of a specific organic factor . . . related to the abnormal mental state and loss of previously acquired functional abilities." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.02.  Indeed, the evidence tends to demonstrate the absence of brain dysfunction.  Mr. Kroger noted that "[p]aper-and-pencil tasks revealed no signs of any gross organic or central nervous system dysfunction."  [Tr., p. 520]  Further, a CT scan taken on May 11, 2010 was "unremarkable," revealing that Gibson's "brain is within normal limits," and exhibits normal ventricles with "no fracture."  [Tr., p. 612]

Moreover, none of the testimony during the hearing could have alerted the ALJ to the fact that Gibson sought disability benefits for an organic mental disorder.  Gibson's attorney indicated that he had previously been found disabled based on Listings 12.04 and 12.08, and stated: "I would argue that he's disabled now for the same reasons he was found disabled before."  [Tr., p. 52]  And although Gibson mentioned the incident with the six police officers, his only testimony on that matter was that "they whipped the crap out of [him]."  [Tr., pp. 84-85]  Notably, he did not testify that the alleged beating caused any head trauma or brain injury.  The Court refuses to

> impose affirmative duties on an ALJ to analyze listings not suggested, much less pressed, by the claimant with the burden of proof. . . .  This creates the very real risk that the claimant, who has the burden of proof at step three, will be rewarded for deliberately choosing not to raise specific listing arguments at the hearing.

*Jones v. Comm'r of Soc. Sec.*, No. 5:10 CV 2621, 2012 WL 946997, at *8 (N.D. Ohio Mar. 20, 2012).  Therefore, the ALJ did not err by failing to include a discussion of Listing 12.02 in his step three evaluation.

-14-

### 3.    Listing 12.05

To meet the requirements for Listing 12.05, a claimant must show "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period."  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05.  To establish mental retardation under this section, Gibson must demonstrate either a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function" or the same IQ range, which results in marked restrictions or difficulties in at least two areas.[3]  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05(C), (D).

Here, the consultative psychological evaluation completed by Psychologist Mark D. Kroger, M.S., indicates that Gibson functions in the "Borderline range of intellectual development."  [Tr., p. 520]  Gibson obtained a Verbal IQ of 68, a Performance IQ of 69, and a Full Scale IQ of 66 on the Wechsler Adult Intelligence Scale. [Tr., p. 516] These scores "fall[] in the Mildly Mentally Retarded range of intellectual development."  [*Id.*]  Additionally, as opposed to the situation with Listing 12.02, there was extensive testimony at the hearing concerning Gibson's difficulties learning and understanding.  Indeed, the ALJ stated that he "noticed the IQ scores," and questioned the claimant about his educational history.  [Tr., p. 52]  ALJ Becher also relied heavily on Mr. Kroger's report, which included and discussed the IQ testing at length.

-------

3      A claimant may also establish mental retardation by two other methods not applicable to this case. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05(A), (B).

-15-

In *Abbott v. Sullivan*, 905 F.2d 918 (6th Cir. 1990), the United States Court of Appeals for the Sixth Circuit found that because several tests established that the claimant's IQ score fell below the maximum score required for disability under Listing 12.05, the ALJ and Commissioner erred by failing to analyze the claimant's mental retardation under the framework of that listing. *Id.* at 924-25. District courts within the Sixth Circuit have generally construed *Abbott* as dictating "'that an ALJ's failure to follow the procedural requirement of explaining in the narrative decision why a claimant with IQ scores under 70 does not have an impairment or combination of impairments that meets or equals the definition of mental retardation under § 12.05(C) is grounds for remand.'" *Fury v. Comm'r of Soc. Sec.*, No. 5:11CV1660, 2012 WL 4475661, at *2 (N.D. Ohio Sept. 26, 2012) (quoting *Isham v. Astrue*, No. 3:08-CV-423, 2010 WL 1957362, at *6 (E.D. Tenn. Jan. 13, 2010)). Here, ALJ Becher did not expressly discuss the application of Listing 12.05 in his opinion. Indeed, nowhere in the opinion does the ALJ even refer to Gibson's IQ scores, even during his discussion of Mr. Kroger's report.[4] [Tr., pp. 27-28]

The Commissioner does not address the lack of analysis in the ALJ's opinion. Instead, he "continue[s] on to conduct the analysis that the ALJ should have conducted." *Fury*, 2012 WL 4475661, at *3. However, "to complete the analysis that the Commissioner is suggesting at this time — to apply the facts of this case to Listing 12.05(C) for the first time and conclude that it does not apply [—] would be a de novo review." *Id.* (emphasis omitted). The Court is not

---

4    In this way, ALJ Becher's opinion differs from the situation in *Lehman v. Commissioner of Social Security*, No. 5:11 CV 14, 2012 WL 1097018, at *3 (N.D. Ohio Mar. 30, 2012). In that case, the court affirmed the ALJ's decision, despite a lack of detailed analysis, because "the ALJ did not fail to take note of [the claimant's] two IQ scores between 60 and 70." *Id.* at *3. In that case, the ALJ addressed all three elements of Listing 12.05(C), "albeit in a form that was less than textbook." *Id.* at *2.

-16-

permitted to conduct such a review. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). ALJ Becher's failure to address the applicability of Listing 12.05 "denotes a lack of substantial evidence, even [though] the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243. Because the ALJ failed to expressly consider whether Gibson's impairment meets or equals Listing 12.05, the Court must remand this matter for further proceedings.

### C.    RFC and Weight of Evidence

Gibson maintains that the RFC does not "adequately accommodate [his] intellectual deficits." [Record No. 24, p. 23] He asserts that ALJ Becher failed to give the proper weight to the medical source opinions when making his RFC determination. The Commissioner counters that the ALJ properly weighed these opinions and that there was substantial evidence for his conclusions.

An ALJ must consider several factors in determining what weight to give medical opinions, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with regard to the record as a whole; (5) whether the treating source is a specialist in the area of his or her opinion; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). As a general rule, the ALJ gives "more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).

Social Security regulations require an ALJ to give "good reasons" for the weight accorded to the opinion of the claimant's treating physician.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  However, there is no such requirement for the opinions of examining medical sources.  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (noting that the Social Security Administration "requires ALJs to give reasons for only *treating* sources" (emphasis in original)).  Therefore, ALJ Becher "was under no special obligation" to provide a detailed discussion of his reasoning behind the weight given to the examining sources discussed herein.  *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012).

### 1.    Mark Kroger, M.S.

Gibson asserts that the ALJ should have accorded greater weight to the consultative psychological evaluation by Mr. Kroger and argues that ALJ Becher erred by failing to provide adequate reasons for choosing not to do so.  [Record No. 24, p. 24]  Mr. Kroger indicated that Gibson experiences moderate impairment in his ability to understand, retain, and follow complex directions; mild to moderate impairment in his ability to understand, retain, and follow simple directions; mild to moderate impairment in his ability to sustain attention and concentration; moderate to severe impairment in his ability to relate to others; and moderate to severe impairment in his ability to tolerate stress and pressure and to accept criticism.  [Tr., p. 520]  However, Mr. Kroger also repeatedly opined that "the claimant utilized a response style that maximized reports of symptomatology."  [*Id.*; *see also* Tr., pp. 517-20]

-18-

The ALJ evaluated Mr. Kroger's opinion regarding Gibson's impairments and assigned it some weight. However, he expressed caution in adopting Mr. Kroger's evaluation of Gibson's mental impairments on the grounds that "the claimant, having been on disability, would be aware that the answers to Dr. Kroger might determine his eligibility for disability payments." [Tr., p. 28] Gibson calls this statement "absurd and bordering on libel." [Record No. 24, p. 24] He also contends that the RFC's "limitation to 'simple, routine, repetitive tasks' does not adequately accommodate Plaintiff's intellectual deficits." [Record No. 24, p. 23] As explained above, however, a claimant's RFC is an issue reserved to the Commissioner, as is the determination regarding what, if any, jobs the claimant can perform. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The regulations provide that a physician's opinion on these issues will be given no "special significance." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

As an examining source, Mr. Kroger's opinion was not entitled to any special deference, and the ALJ was not required to give "good reasons" for failing to give the opinion controlling weight. *Smith*, 482 F.3d at 876. Contrary to Gibson's assertion, however, the ALJ adequately explained his reasons for refusing to give greater weight to Mr. Kroger's opinion concerning Gibson's limitations. [Tr., p. 28] Further, the ALJ's determination on this issue was supported by Mr. Kroger's own findings. [Tr., p. 517 ("There appears to have been a response style utilized by the claimant that excessively and exaggeratively [sic] documented the presence of symptomatology."); Tr., p. 520 (noting that claimant likely "maximized reports of symptomatology")] Otherwise, as the Commissioner points out, the RFC was "generally

-19-

consistent with [Mr.] Kroger's conclusions." [Record No. 27, p. 15]  Therefore, ALJ Becher's refusal to adopt the stricter limitations indicated by Mr. Kroger's evaluation was not error.

### 2.    Dr. Alvarez

Gibson argues that ALJ Becher erred by giving substantial weight to the opinion of Dr. Anthony Alvarez because "Dr. Alvarez did not perform a detailed psychological evaluation, and did not formally assess Plaintiff's ability to sustain work." [Record No. 24, p. 24]  Dr. Alvarez treated Gibson during an overnight stay at St. Luke Hospital in September 2007, when Gibson was admitted for suicidal ideation. [Tr., pp. 483-85]  After speaking with Gibson and reviewing his past psychiatric history, Dr. Alvarez found that Gibson was alert, oriented, and cooperative. Dr. Alvarez indicated that Gibson had fair intellectual function and memory, and otherwise did not appear to be depressed. [Tr., p. 484]  He further opined: "I do not feel he is disabled from a psychiatric standpoint." [Tr., p. 483]  ALJ Becher accorded Dr. Alvarez's opinion substantial weight "as it is consistent with the rest of the medical evidence." [Tr., p. 27]  He noted that Gibson may have been less likely to overstate his symptoms to Dr. Alvarez than to Mr. Kroger because he "would not have been motivated to persuade Dr. Alvarez that he was disabled." [*Id.*]

A treating source's medical opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Gibson argues that although "Dr. Alvarez technically 'treated' Plaintiff, his level of contact with Plaintiff was hardly more than Psychologist Kroger's." [Record No. 24, p. 24]  However, the length of the treatment relationship is only one of the

-20-

factors for an ALJ to consider when evaluating a medical source statement.  20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").  It was not error for the ALJ to give significant weight to Dr. Alvarez's opinion just because it was based on a brief treatment relationship.

Similarly, Gibson argues that the ALJ should have accorded Dr. Alvarez's opinion less weight due to "the fact that Dr. Alvarez did not provide a detailed, function-by-function analysis."  [Record No. 24, p. 25]  Again, however, the supportability of a medical opinion is only one of the factors for the ALJ to consider in deciding on the weight to give that opinion. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.").  ALJ Becher relied heavily on another factor — the consistency of the opinion with the record as a whole — when deciding to give Dr. Alvarez's opinion substantial weight.  *See*  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).  The Court cannot conclude from the evidence in the record that the ALJ erred in doing so, and thus declines Gibson's invitation to re-weigh that evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) ("We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence.").  In short, the weight given to the opinion by Dr. Alvarez was appropriate and supported by substantial evidence.

### 3.    Dr. Ross

Gibson argues that the ALJ's "reliance on Dr. Ross's opinion is also inappropriate." [Record No. 24, p. 25]  Dr. Ed Ross, a state-agency reviewing physician, completed a Mental

-21-

Residual Functional Capacity Assessment and Psychiatric Review Technique form on February 25 2009, based on a review of Gibson's previous medical records. [Tr., pp. 528-45] Dr. Ross found that Gibson suffers from affective disorders, personality disorders, and substance abuse disorder, as well as antisocial personality disorder. [Tr., pp. 532, 535, 539] Dr. Ross opined that Gibson exhibits moderate limitations in his ability to: (1) understand and remember detailed instructions; (2) maintain attention and concentration for an extended period; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (4) interact appropriately with the general public. [Tr., pp. 528-29] He found no significant limitations in any other area of the claimant's functioning, and averred that Gibson has the "basic mental skills" to maintain "attention for two hour periods across a normal workday," make work-related decisions without supervision, "[t]olerate coworkers and accept supervision in an object focused context with infrequent and casual contacts," and "[a]dapt to gradual change and appreciate work hazards on the job." [Tr., p. 530] The ALJ accorded Dr. Ross's opinions significant weight, to the extent that they were consistent with the RFC, "as they are based on a review of the claimant's medical record." [Tr., p. 27]

Gibson contends that Dr. Ross's opinion was based on incomplete records and that the explanations for his opinion were inconsistent. However, Gibson has failed to demonstrate that Dr. Ross did not consider the whole of Gibson's medical history in formulating his opinion. He asserts that Dr. Ross "stated that the medical record was very thin" [Record No. 24, p. 25], apparently referring to Dr. Ross's statement that "[t]here is no mental TS opinion in file nor appreciable psychiatric care data nor even [primary care physician] prescribed psychotropics."

[Tr., p. 530]  Yet, as the Commissioner points out, "Dr. Ross considered and gave great weight to Dr. Kroger's medical source statement."[5]  [*Id.*, p. 19 (citing Tr., p. 530)]  Gibson maintains that it was inconsistent for Dr. Ross to give such weight to the Mr. Kroger's evaluation due to a finding that the opinion was "congruent with reported mental residuals."  [*Id.*]  Contrary to Gibson's assertion, however, it is not inconsistent for Dr. Ross to note the relative lack of evidence supporting Gibson's mental impairments yet also rely on some of that evidence to come to his own conclusion.

Gibson also argues that Dr. Ross's opinion is not well-supported because he "failed to explain which aspects of Plaintiff's daily activities are supposedly inconsistent with his alleged psychological limitations." [Record No. 24, p. 25]  The Commissioner counters that "the ALJ did not give undue weight" to Dr. Ross's evaluation because the "amount of explanation that a non-examining source provides in support of his conclusions is [only] one factor that the ALJ can use to determine its appropriate weight."  [Record No. 27, pp. 18-19 (citing 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3))]  ALJ Becher adequately explained the inconsistencies between Gibson's reported activities and his claimed mental impairments in the RFC finding.  [Tr., p. 26]  Therefore, it was not error for the ALJ to consider and accord significant weight to Dr. Ross's opinion just because Dr. Ross did not fully explain those same inconsistencies.

---

5       Dr. Ross refers to the "Psy CE Vendor" and "MSS" — *i.e.*, "medical source statement" — in his report, both of which refer to the report compiled by Mr. Kroger, the psychological consultative examiner. [Tr., p. 530]

### D.    Credibility

Finally, Gibson contends that ALJ Becher improperly evaluated his credibility.  Gibson objects to the following findings by the ALJ:

> The long delay between [Gibson's psychiatric] appointments further lessens the credibility of the claimant's allegations of disabling symptoms.  Further, during an appointment at NorthKey Community Care, the claimant stated that he is depressed and anxious all of the time, and that he needed to have the appointment in order to retain social security income.  Moreover, the claimant's treatment notes indicated that the claimant was focused on wanting to be 'signed off' on disability.  These findings indicate that the claimant may have returned to psychiatric treatment, not because he wanted help, but instead to procure social security benefits.

[Tr., p. 27]

The ALJ is in a unique position to "observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  In fact, an ALJ is "charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  As a result, an ALJ's credibility determinations are "entitled to deference on judicial review." *Boyett v. Apfel*, 8 F. App'x 429, 434 (6th Cir. 2001).  However, if the ALJ "rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Brown*, 35 F.3d 1027, 1036 (6th Cir. 1994).

Gibson argues that the failure to seek treatment should not be held against a person without the financial means to continue that treatment. *See McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990); *but see Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 ("The issue of poverty as legal justification for failure to obtain treatment does not arise unless a claimant is found to be under a disabling condition.").  During the administrative hearing, Gibson testified

-24-

that he stopped seeing a counselor in 2008 because he could no longer afford the treatment. [Tr., p. 57] However, "despite [Gibson's] financial situation, the ALJ was still entitled to consider his inconsistent medical treatment while making a negative credibility finding because the ALJ's finding was based on a variety of factors." *Tippett v. Colvin*, No. 6:12-cv-239-JMH, 2013 WL 3233579, at *7 (E.D. Ky. June 24, 2013). Moreover, there was substantial evidence in the record to support the ALJ's decision to discount Gibson's assertion that his failure to seek treatment was based on financial concerns. For instance, when Dr. Alvarez asked Gibson on September 11, 2007 why he had not followed up with his counseling for over a year, Gibson "said that his appointments got mixed up and he has not been able to go, [and] he said 'I just got pissed off and did not go.'" [Tr., p. 483] Additionally, as the Commissioner points out, Gibson has previously reported "smoking marijuana daily until around July 2010, and smoking three to four cigarettes a day," an admission that tends to belie Gibson's contention that he did not have the money for treatment. [Record No. 27, p. 23 (citing Tr., p. 483, 599)] Therefore, ALJ Becher's consideration of the lapse of time in Gibson's psychiatric treatment history was not error.

Gibson asserts that the ALJ erred by finding him "less than fully credible partly because he believed [Gibson] sought treatment at Northkey merely as a means to obtain his disability benefits." [Record No. 24, p. 28] Gibson maintains that his primary motivation was a "desire to obtain treatment for his psychiatric impairments." [*Id.*] Despite this assertion, the ALJ did not err by concluding that Gibson sought treatment, at least in part, to support his claim for Social Security benefits. The ALJ's credibility determination regarding Gibson's reasons for seeking treatment was supported by substantial evidence in the record. [*See, e.g.*, Tr., p. 569 ("I

-25-

need to come here in order to retain SSI."); Tr., p. 607 (noting that Gibson was "focused on wanting to be 'signed off' on disability")][6]  The fact that Gibson may have been motivated to seek counseling for legitimate reasons does not render the ALJ's conclusion erroneous.  The "findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion."  *Buxton*, 246 F.3d at 772.

ALJ Becher's discussion of Gibson's subjective complaints was not unreasonable or outside the scope of his authority.  The credibility assessment was thorough and well-reasoned. Furthermore, as discussed above, it was based on several factors, including his own observations about Gibson's reliability.  As a result, the Court will not disturb the ALJ's credibility determination.

## IV.

The ALJ's determination of the claimant's severe impairments, the weight he gave to the medical source statements, and his assessment of Gibson's credibility were supported by substantial evidence.  However, the ALJ failed to consider Gibson's mental impairments in light of the requirements in Listing 12.05.  As a result, the Court cannot conclude that substantial evidence supports the ALJ's conclusion that Gibson is not disabled.  Pursuant to sentence four of 42 U.S.C. § 405(g), this case will be remanded back to the ALJ for further proceedings consistent with this Memorandum Opinion and Order.  Accordingly, it is hereby

---

6       The Court rejects Gibson's assertion that the ALJ "misstated the record" on this point.  [Record No. 24, p. 29]  The record stating that Gibson's "lawyer would like him to involve himself with a PCP and mental health people in an effort to get back his benefits" actually supports the ALJ's conclusion that Gibson's primary purpose in seeking treatment was to obtain Social Security benefits, rather than refuting that determination.  [Tr., p. 576]  Similarly, the ALJ did not fail to "acknowledge that [Gibson] had true, observable signs of mental illness."  [Record No. 24, p. 29]  Indeed, he found several of Gibson's mental disorders to be severe impairments.  [Tr., p. 23]

**ORDERED** as follows:

(1)     Plaintiff Mark Kenndrick Gibson's Motion for Summary Judgment [Record No. 24] is **GRANTED,** in part, to the extent that he seeks a remand for further administrative proceedings.  To the extent he seeks an award benefits, his motion is **DENIED**.

(2)     Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 27] is **DENIED**.

(3)     The decision of Administrative Law Judge Donald A. Becher is **REVERSED** and the matter is **REMANDED** for further administrative proceedings consistent with this opinion.

This 15th day of July, 2013.

Signed By:

*Danny C. Reeves*   DCR

United States District Judge